JOSEPH CRONISE *vs.* JOHN C. HARDT, Executor of MARGARET WATERS, and HORATIO WATERS, and others.

## CONVERSION OF REALTY INTO PERSONALTY.

*Sales of Real Estate of testator by executors—When proceeds of such sales will be regarded as Realty—When regarded as Personalty—Lien of a judgment on such proceeds—When the Conversion of Realty into Personalty, in cases of sales by executors, is complete—Legal presumptions in favor of the propriety of sales of Realty made by executors and ratified by the Orphans' Court.*

Where a sale of real estate is rendered unnecessary by reason of a *total* failure of the purposes for which the conversion was directed or authorized, or where the sale is *unnecessarily* made by an executor or trustee, the rights of the parties entitled to the real estate, *as such*, remain unvaried.

The conversion of real into personal property, or personal into real, under a power in a will, takes place only *for the purposes for which it is authorized;* and so far as those purposes do not extend, or, in so far as any of them do not take effect in fact or in law, the property is considered as remaining in its former condition, and passes accordingly.

Where an executor sells real estate of his testator to pay his debts, under a power in the will, the conversion of the realty into personalty is complete

to all intents and purposes only to the extent to which the purchase money is required for the particular objects for which the sale takes place, and the excess, though in the form of money, remains impressed with the character of real estate *for the purpose of determining who is entitled to receive it;* but for that purpose only.

Where land is properly sold by an executor or a trustee, and there is only a partial disposition of the proceeds of sale in fulfilment of the objects for which the sale was made, there the surplus belongs to the heir or devisee, as the case may be, *as money,* and not as real estate.

From the time of the conversion in fact, the right of the devisee or heir, as the case may be, to the surplus money becomes vested, and from that time it assumes the character of personalty.

No judgment against an heir or devisee, recovered after the sale of real estate by an executor under a power in a will, can create any lien upon the proceeds of such sale; the fund cannot be considered as realty for the benefit of a judgment creditor, when it is held and owned by the judgment debtor only as personalty.

Sales made under the sanction of the Orphans' Court and ratified by it, must be presumed to have been properly and justifiably made.

APPEAL from the Circuit Court for Frederick County, in Equity.

The case is fully stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BRENT, MILLER and ALVEY, J.

*Wm. J. Ross* and *Charles W. Ross,* for appellant.

*Milton G. Urner* and *James McSherry,* for appellees.

ALVEY, J., delivered the opinion of the Court.

By the will of Horatio Waters, he authorized and empowered his executrix to sell at public or private sale, as she might deem best, and without the previous order of the Orphans' Court, all or so much and such parts of his

real and personal estate as might be necessary for the payment of his debts and funeral expenses; and after the payment of debts and funeral expenses, he gave, devised and bequeathed all the rest and residue of his estate, real, personal and mixed, to his wife, Margaret Waters, for life, and after her death to be divided between his two sons, Cyrus Waters and Horatio Waters, share and share alike; and in case of the death of either of them, the portion to which he would be entitled, if living, the testator directed to be divided amongst the children of the deceased son. The testator appointed his wife, Margaret, sole executrix; and the personal estate proving insufficient, by a small amount, to pay all the debts and funeral charges, the executrix, with the sanction of the Orphans' Court, sold an unimproved lot, part of the real estate devised, for $1450. The testator died in 1866, and this sale was made on the 26th of November, 1868, and it was ratified by the Orphans' Court on the 7th day of June, 1869. Cyrus Waters, one of his sons and devisees named in the will, died after the date of the will, in the life-time of the testator, leaving three children, whose names appear in the proceedings. After the payment of the debts, the balance of the proceeds of the real estate sold, amounting to $1454, inclusive of interest received, was distributed to the widow for life, and the larger portion of which was invested in State bonds. Mrs. Waters, the devisee for life, died in 1875, and John C. Hardt, her executor, has received into his hands bonds amounting to about $700 of the specific fund; the balance having been disposed of by Mrs. Waters in her life-time.

After the sale of the real estate by the executrix, the appellant recovered two judgments in the Circuit Court for Frederick County against Horatio Waters, one of the devisees under his father's will;—the first at the May Term, 1869, for $650, and the other at the February Term, 1871, for $350. And the appellant filed the pre-

sent bill against John C. Hardt, executor of Mrs. Waters; and Horatio Waters, the devisee, and defendant in the judgments, claiming and insisting that the fund, the product of the real estate sold, should be taken and considered as real estate unconverted, and that his judgments constitute liens thereon ; wherefore he seeks an appropriation of one-half of the product of the real estate distributed to Mrs. Waters, in payment of his judgments.

Horatio Waters, in his answer, insists that the real estate was properly sold by his mother under the power conferred upon her by his father's will, and that there was a complete conversion of the estate from realty into personalty ; and he denies that the judgments created liens on the proceeds of the sale, either in the hands of his mother or of her executor. The executor Hardt, without admitting or denying the right asserted by the appellant, submits the matter to the judgment of the Court.

1. It is, in the first place, contended by the appellant, that the executrix exceeded her authority in making the sale ; that she was only empowered to sell so much of the real estate as might be required for the payment of debts and funeral expenses, and that the personal estate was deficient for these purposes only about $15, and that this small deficiency did not justify the sale of real estate to the value of $1450. Upon the principle that where a sale is rendered unnecessary by reason of a *total* failure of the purposes for which the conversion was directed or authorized, or where a sale is *unnecessarily* made by an executor or trustee, the rights of the parties entitled to the real estate *as such* remain unvaried, it is contended that the devisee Horatio Waters retains his right in the proceeds of the sale made by his mother *as real estate;* (*Chitty vs. Parker*, 2 *Ves. Jr.*, 271; *Smith vs. Claxton*, 4 *Madd.*, 484*; *Davenport vs. Coltman*, 12 *Sim.*, 610;) and therefore the judgments created a lien as if no sale had been made.

It is certainly true, that the conversion of real into personal property, or personal into real, under a power in a

will, takes place only *for the purposes for which it is authorized;* and so far as those purposes do not extend, or, in so far as any of them do not take effect in fact or in law, the property is considered as remaining in its former condition, and passes accordingly. 1 *Lead. Cas. Eq.,* (*3rd Ed.,*) 831. But, in this case, there was a small deficiency of the personal estate, and the executrix was well authorized to make good that deficiency by a sale of the real estate. The extent of the sale was another matter. The devisees could have advanced the amount required, and thus prevented the sale; or they could have restrained the excessive exercise of the power of sale, by a proper application to a Court of equity; but as the question is now presented, inasmuch as the sale was made under the sanction of the Orphans' Court and was ratified by it, we must presume that there were circumstances attending the sale that justified it to the extent that it was made. It may have been that the property was not susceptible of a smaller division, consistently with the interest of all concerned; or that the sale was made with the consent of those interested; and, so far as Horatio Waters was concerned, that may well be inferred from his answer to the bill in this case. This presumption in favor of the sale is fully warranted by the decision of Lord Chancellor CAMDEN, in the case of *Flanagan vs. Flanagan,* referred to, and fully stated by the Master of the Rolls, in *Fletcher vs. Ashburner,* 1 *Bro. C. C.,* 500, 501. But, notwithstanding the sale may have been justified in the extent to which it was made, still, the conversion was complete to all intents and purposes only to the extent to which the purchase money was required for the particular objects for which the sale took place, that is to say, for the payment of debts, funeral expenses, and costs; and the excess, though in the form of money, remained impressed with the character of real estate *for the purpose of determining who was entitled to receive it. Trippe vs. Frazier,* 4 *H. & John.,*

446; *Cook vs. Dealey,* 22 *Beav.*, 196.   But it retained the character of realty for that one purpose, and that only.

2.  Then, the next question is, when, and at what point of time, did the surplus proceeds of sale in this case take the nature and character of personalty? or, in other words, from what time is the conversion to be considered as complete?   And upon this question the authorities are clear, and without conflict; and they hold, that where the land is properly sold by the trustee or executor, and there is only a partial disposition of the proceeds of sale in fulfilment of the objects for which the sale was made, there the surplus belongs to the heir, or devisee, as the case may be, *as money*, and not as real estate; and such surplus, according to the English cases, if not otherwise disposed of, will go to the personal representatives of the heir or devisee, even though the land may not have been sold during his life-time.   *Flanagan vs. Flanagan, supra; Hewitt vs. Wright,* 1 *Bro. C. C.,* 86, 90; *Wright vs. Wright,* 16 *Ves.,* 188, 193; *Smith vs. Claxton,* 4 *Madd.,* 484; *Dixon vs. Dawson,* 2 *Sim. & St.,* 327; 1 *Lead. Cas. Eq.,* (3rd *Ed.*,) 821.   From the time of the conversion in fact, the devisee's right to the surplus money became vested, subject to the life estate of the mother, and from that time it assumed the character of personalty; and, in the events that have happened, upon the death of the devisee, it would go to his personal representatives.   See *Grider vs. McClay,* 11 *Sergt. & R.,* 224, and *Pennell's Appeal,* 8 *Harris,* 515.

Such then being the right of the devisee, Horatio Waters, in the surplus fund produced by the sale of the real estate devised, it is clear that no lien was created thereon by the judgments against the devisee rendered after the sale.   The judgment creditor has no equity or right to claim that the fund shall be considered as realty, when it is owned and held by the judgment debtor only as personalty.   And having no lien attached to the fund, the

foundation of the appellant's bill failed, and the Court below was right in dismissing it. The fact that the judgment debtor is insolvent, or without available means to pay the judgments, confers no authority on a Court of equity to impound the fund and apply it to the satisfaction of the judgments. Other remedies must be resorted to for that purpose.

And as to the petition of the children of Cyrus Waters, deceased, to be made defendants in the case, that abides the fate of the bill of the appellant. No rights that they may have, as against the original defendants to the bill, are in any manner affected by the decree from which the present appeal is taken.

*Decree affirmed.*

(Decided February 8th, 1878.)